No. 2889

Second Circuit

PAGE v. LOUISIANA REAL ESTATE & DEVELOPMENT CO.

(November 18, 1929. Opinion and Decree.)

Cook & Cook, of Shreveport, attorneys for plaintiff, appellee.

George Thurber, of Shreveport, attorney for defendant, appellant.

ODOM, J. Plaintiff in his petition alleges that the defendant company is due him the sum of $585 for rent on certain real estate which he owns in the Parish of Caddo, which rent, he alleges, was collected from a tenant named John Gilliam, by the defendant company, and which amount the defendant company now refuses to pay.

The defendant, in its answer, denies generally all of plaintiff's allegations, and. in Section VIII of the answer it is alleged:

"Further answering, defendant shows the Court that it has never collected rents from the said John Gilliam for the occupancy of any portion of land belonging to plaintiff."

Counsel for both plaintiff and defendant state in briefs that this case bears wholly upon questions of fact, the only question being whether certain rents which were admittedly collected by defendant were due for property owned by the plaintiff, it being conceded by defendant that if the land on which defendant collected these rents is the property of plaintiff, then it is due plaintiff the amount of rents collected.

The testimony shows beyond question that John Gilliam, the tenant from whom defendant collected the said amounts, did not during the whole period of time over which those rents were being collected by defendant, occupy or cultivate any land, except that owned by the plaintiff, Page, with the exception of a small strip estimated to be 300 by 345 feet, said by Gilliam, the tenant, to contain about two and one-half or three acres.

There is no question about the identity of the land which is owned by the plaintiff. It seems that a number of years ago the defendant company acquired a large tract of land in that vicinity from a man by the name of Carter. The land was subdivided by the defendant into 10-acre lots, which lots were sold to various individuals, the plaintiff having acquired some three or four of the lots. These lots may have been surveyed when the property was

subdivided, but the testimony shows that up until 1923 the lines had not been definitely staked or marked. But in that year the land was surveyed and marked. The tenant, Gilliam, was called as a witness and he testified positively that he knew the exact location of plaintiff's land from the stakes which had been set by the surveyor, and that from about 1914 down to 1923, inclusive, he had occupied a residence on plaintiff's land and that he had cultivated no land at all, except the Page land and a small strip to the north of it, containing 2½ or 3 acres. Charles Hooks, a colored man, who stated that he was born in 1845, and had known and had frequently been over all this land for the last fifty years, testified that to his personal knowledge the tenant, Gilliam, had cultivated no land in that vicinity, except that which belonged to Mr. Page and a small strip to the north of it. He testified further that he was very familiar with the boundaries of plaintiff's land, having seen the stakes and markers set by the surveyors. Robert Gilbert, another colored man, who lives in that vicinity, testified positively that to his personal knowledge the tenant, Gilliam, had cultivated no land, except that which belonged to the plaintiff. These colored people—not one of whom had any interest in the outcome of this litigation and knew nothing of the merits of the controversy between these litigants—are the only witnesses called who had any definite knowledge as to the real point in controversy. Mr. Bluestein and Mr. Schutt, both connected with the defendant company, testified that the tenant, Gilliam, had contracted with the defendant company to pay $45 a year for as much of the land which the company owned as he desired to cultivate. But neither of these witnesses had any definite knowledge as to just what lands Gilliam had been cultivating. To illustrate, Mr. Bluestein was asked whose land it was that Gilliam had in his field and he answered that it belonged to the Louisiana Real Estate & Development Company. He was asked how he knew that, and he answered:

"Well, I don't know, but we own land there and he could have had any land we had because we had that agreement and he was up there long enough."

As we have stated, the Carter tract was subdivided into lots of ten acres each and the lots were sold to various individuals, and what was not sold was owned at the time of this suit by the defendant company. It is no doubt true that when the defendant company, through Mr. Bluestein and Mr. Schutt, collected these amounts from Gilliam, it did so in good faith thinking that the amounts due were for rent on land owned by the company. But the testimony makes it perfectly clear that they were mistaken. As stated, it is conceded that if the land cultivated by the tenant, Gilliam, belonged to the plaintiff, then the rents were due him and that the defendant should make good the amounts to plaintiff.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs in both courts.